```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X

BNP PARIBAS,                       :

                    Plaintiff,     :    11 Civ. 350 (PGG)(HBP)

     -against-                     :    OPINION AND
                                        ORDER
THE BANK OF NEW YORK TRUST         :
COMPANY, N.A.,
                                   :

                    Defendant.     :

---------------------------------X
```

PITMAN, United States Magistrate Judge:

I.  Introduction

I write to resolve a dispute between the parties concerning certain documents that plaintiff is withholding on the bases of the attorney-client privilege and the work-product doctrine.  The documents in issue all relate to a May 11, 2011 Letter from MBIA Insurance Company ("MBIA") to The Bank of New York Trust Company, N.A. ("BONY") that is annexed to the Amended Complaint as Exhibit C (the "MBIA Letter").  For the reasons set forth below, I conclude that, with a few exceptions described in more detail below, the documents in issue must be produced.

II.  Facts

The facts that give rise to this action are set forth in detail in the Opinion of the Honorable Paul G. Gardephe, United States District Judge, dated March 28, 2012 (Docket Item 25), granting in part and denying in part defendant's motion to dismiss.  I recite the facts here only to the extent necessary for an understanding of the dispute before me.

Plaintiff, BNP Paribas ("Paribas"), purchased certificates issued by the Flagstar Home Equity Loan Trust, of which defendant, BONY, is the trustee.  If certain conditions occurred, purchasers of the trust certificates were entitled to receive payments from an insurance policy BONY had purchased from MBIA. The certificates were issued in different classes.  This action arises from a dispute as to how the payments from MBIA should be allocated among the classes of trust certificate holders.

Paribas claims that the insurance payments should be distributed pro rata among all certificate holders.  BONY has been distributing the insurance payments sequentially such that certificate holders with a higher priority are fully paid before certificate holders with a lower priority receive any payment. BONY, not MBIA, controls how insurance payments are allocated among certificate holders, and the amount of MBIA's liability is

2

not affected by the manner of allocation.  Neither Paribas nor
BONY has asserted any claims against MBIA, and the record does
not even suggest that claims against MBIA have ever been contem-
plated by anyone.

The present dispute arises out of a letter annexed as
Exhibit C to Paribas' Amended Complaint (Docket Item 15) -- the
MBIA Letter.  The MBIA Letter is dated May 11, 2011 -- the same
day the amended complaint was filed -- and was sent by Brian
Hynes, a Director of MBIA, to Robert E. Bailey, a Managing
Director and Senior Managing Counsel of BONY.  In substance, the
MBIA Letter sets forth MBIA's belief that BONY's understanding of
the appropriate method for distributing insurance payments is
incorrect and that the insurance payments should be distributed
on a pro rata basis rather than sequentially.  In short, MBIA's
letter asserts that Paribas' interpretation of the manner in
which insurance payments should be allocated is correct and that
BONY's interpretation is incorrect.

During the course of discovery, BONY learned that there
were documents in the possession of Paribas and its counsel
concerning the MBIA Letter that had not been produced in discov-
ery.  In addition, these documents had not been listed on
Paribas' privilege log as a result of the parties' agreement that
documents created after the commencement of the lawsuit need not

be logged.  BONY sought production of the documents concerning

the MBIA Letter, and Paribas refused.  The parties raised their

dispute in a March 11, 2013 joint letter to Judge Gardephe who

subsequently referred the matter to me for resolution.  I heard

oral argument on April 9, 2013, and directed Paribas to prepare

an index of the documents withheld and to submit the documents to

me for in camera review.  Twenty-five documents are in issue;

they consist of:  (1) emails between Paribas' counsel and MBIA

concerning the dispute between Paribas and BONY and the MBIA

Letter, (2) emails between Paribas' outside counsel and its in-

house counsel concerning discussions with MBIA or the MBIA

Letter, (3) emails substantially internal to Paribas describing

the status of discussions between Paribas' outside counsel and

MBIA, (4) emails substantially internal to Paribas describing the

status of the action or the MBIA Letter and (5) emails transmit-

ting a draft amended complaint.

III.  Analysis

    A.   The Attorney-Client Privilege
        Privilege and Work-Product
        Doctrine:  General Principles

       1.  The Attorney-Client Privilege

The elements of the attorney-client privilege are well settled:

> "The [attorney-client] privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communica-tion is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assis-tance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."

Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 441 (S.D.N.Y. 1995) (Francis, M.J.), quoting United States v. United Shoe Mach. Corp., 89 F. Supp. 357, 358-59 (D. Mass. 1950) (Wyzanski, D.J.); see United States v. Davis, 131 F.R.D. 391, 398 (S.D.N.Y. 1990) (Conboy, D.J.).  The privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."  Upjohn

5

Co. v. United States, 449 U.S. 383, 390 (1981).  Therefore, "[i]t
is now [also] well established that the privilege attaches not
only to communications by the client to the attorney, but also to
advice rendered by the attorney to the client, at least to the
extent that such advice may reflect confidential information
conveyed by the client."  Bank Brussels Lambert v. Credit
Lyonnais (Suisse) S.A., supra, 160 F.R.D. at 441-42; see also
O'Brien v. Bd. of Educ., 86 F.R.D. 548, 549 (S.D.N.Y. 1980)
(Leval, then D.J., now Cir. J.); SCM Corp. v. Xerox Corp., 70
F.R.D. 508, 520-22 (D. Conn.), appeal dismissed, 534 F.2d 1031
(2d Cir. 1976).

         "'[T]he burden is on a party claiming the protection of
a privilege to establish those facts that are the essential
elements of the privileged relationship.'"  von Bulow by
Auersperg v. von Bulow, 811 F.2d 136, 144 (2d Cir. 1987), quoting
In re Grand Jury Subpoena Dated Jan. 4, 1984, 750 F.2d 223, 224
(2d Cir. 1984).  Thus, "the party seeking to invoke the privilege
must establish all elements of the privilege."  Bowne of N.Y.
City, Inc. v. AmBase Corp., 150 F.R.D. 465, 470 (S.D.N.Y. 1993)
(Dolinger, M.J.) (collecting cases).  In addition, courts "con-
strue the privilege narrowly because it renders relevant informa-
tion undiscoverable" and "apply it 'only where necessary to
achieve its purpose.'"  In re Cnty. of Erie, 473 F.3d 413, 418

(2d Cir. 2007), quoting Fisher v. United States, 425 U.S. 391,
403 (1976).

    2.  The Work-Product Doctrine

        The work-product doctrine arises out of the realization
that

        [i]n performing his various duties . . . it is essen-
        tial that a lawyer work with a certain degree of pri-
        vacy, free from unnecessary intrusion by opposing
        parties and their counsel. . . . This work is re-
        flected, of course, in interviews, statements, memo-
        randa, correspondence, briefs, mental impressions,
        personal beliefs, and countless other tangible and
        intangible ways -- aptly though roughly termed . . . as
        the "Work product of the lawyer."  Were such materials
        open to opposing counsel on mere demand, much of what
        is now put down in writing would remain unwritten.  An
        attorney's thoughts, heretofore inviolate, would not be
        his own.  Inefficiency, unfairness and sharp practices
        would inevitably develop in the giving of legal advice
        and in the preparation of cases for trial.  The effect
        on the legal profession would be demoralizing.  And the
        interests of the clients and the cause of justice would
        be poorly served.

Hickman v. Taylor, 329 U.S. 495, 510-11 (1947); see also United
States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998) (stating
that work-product doctrine "is intended to preserve a zone of
privacy in which a lawyer can prepare and develop legal theories
and strategy 'with an eye toward litigation,' free from unneces-
sary intrusion by his adversaries," quoting Hickman v. Taylor,
supra, 329 U.S. at 511).

                            7

A claim of work-product has three elements:  "[t]he material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative."  In re Grand Jury Subpoenas dated Dec. 18, 1981 & Jan. 4, 1982, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982); see Bice v. Robb, 07 Civ. 2214 (PAC), 2010 WL 5373904 at *1 (S.D.N.Y. Dec. 22, 2010) (Crotty, D.J.), aff'd, 2013 WL 535783 (2d Cir. 2013) (summary order); Adamowicz v. I.R.S., 552 F. Supp. 2d 355, 365 (S.D.N.Y. 2008) (Preska, D.J.).

If the proponent succeeds in establishing these elements, the burden then shifts to the party seeking discovery of work-product material to show substantial need for the material and an inability to obtain its substantial equivalent from another source without undue hardship.  Weinhold v. Witte Heavy Lift, Inc., 90 Civ. 2096 (PKL), 1994 WL 132392, at *3 (S.D.N.Y. Apr. 11, 1994) (Leisure, D.J.); accord Kent Corp. v. N.L.R.B., 530 F.2d 612, 623-24 (5th Cir. 1976).  However, "while factual materials falling within the scope of the doctrine may generally be discovered upon a showing of 'substantial need,' attorney mental impressions are more rigorously protected from discovery[.]"  In re Leslie Fay Cos. Sec. Litig., 161 F.R.D. 274, 279 (S.D.N.Y. 1995) (Conner, D.J.); accord In re Grand Jury Subpoena

8

Dated July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007) ("[O]pinion
work product . . . is entitled to greater protection than fact
work product."); The Shinnecock Indian Nation v. Kempthorne, 652
F. Supp. 2d 345, 367 (E.D.N.Y. 2009) ("[E]ven in those cases in
which courts have held that selective or partial disclosure has
impliedly waived the privilege, courts have been reluctant to
hold that implied waiver of non-opinion work product extends to
opinion work product."); In re Kidder Peabody Sec. Litig., 168
F.R.D. 459, 473 (S.D.N.Y. 1996) (Dolinger, M.J.) (limiting
work-product waiver to purely factual materials, leaving pro-
tected "core attorney mental processes").

### 3.  "At Issue" Waiver

Both the attorney-client privilege and the protection
afforded by the work-product may be waived if the holder of the
privilege or protection makes affirmative use of the protected
material and fairness requires additional disclosure.

> Generally, "[c]ourts have found waiver by implica-
> tion when a client testifies concerning portions of the
> attorney-client communication, . . . when a client
> places the attorney-client relationship directly at
> issue, . . . and when a client asserts reliance on an
> attorney's advice as an element of a claim or defense .
> . . ." Sedco Int'l S.A. v. Cory, 683 F.2d 1201, 1206
> (8th Cir. 1982).  The key to a finding of implied
> waiver in the third instance is some showing by the
> party arguing for a waiver that the opposing party

> relies on the privileged communication as a claim or
> defense or as an element of a claim or defense.

In re Cnty. of Erie, 546 F.3d 222, 228 (2d Cir. 2008).

"'[W]hether fairness requires disclosure . . . is best decided on a case by case basis, and depends primarily on the specific context in which the privilege is asserted.'" John Doe Co. v. United States, 350 F.3d 299, 302 (2d Cir. 2003), quoting In re Grand Jury Proceedings, 219 F.3d 175, 183 (2d Cir. 2000); accord In re Sims, 534 F.3d 117, 131-32 (2d Cir. 2008).

The protection afforded by the work-product doctrine is also subject to waiver when the a party makes testimonial use of work-product materials.  For example, in United States v. Nobles, 422 U.S. 225 (1975), the defendant in a bank robbery case had attempted to impeach the testimony of prosecution eye witnesses by calling an investigator retained by the defendant to testify concerning statements the witnesses had made to the investigator prior to trial.  422 U.S. at 227-29.  Specifically, the defense sought to introduce testimony from the investigator that one witness had told the investigator that "'all blacks looked alike' to him;" the witness had denied making the statement when cross-examined about it.  422 U.S. at 228.  The trial court ruled that if the investigator testified concerning statements made by the witness, the relevant section of the investigator's reports of

the interview would have to be produced at the conclusion of the investigator's testimony.  422 U.S. at 228.  Defense counsel advised the court that he would not intend produce any of the report, and the trial court precluded the investigator's testi-mony.  422 U.S. at 229.

The Supreme Court affirmed the conviction, finding that the admission of testimony from the investigator concerning his interviews of the witness would result in a waiver of work product protection with respect to his reports concerning those interviews.

> The privilege derived from the work-product doc-trine is not absolute.  Like other qualified privi-leges, it may be waived.  Here respondent sought to adduce the testimony of the investigator and contrast his recollection of the contested statements with that of the prosecution's witnesses.  Respondent, by elect-ing to present the investigator as a witness, waived the privilege with respect to matters covered in his testimony.[14]  Respondent can no more advance the work-product doctrine to sustain a unilateral testimo-nial use of work-product materials than he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination.  See, e.g., McGautha v. California, 402 U.S. 183, 215 (1971).

_____

[14]What constitutes a waiver with respect to work-product materials depends, of course, upon the circumstances.  Counsel necessarily makes use through-out trial of the notes, documents, and other internal materials prepared to present adequately his client's case, and often relies on them in examining witnesses.

> When so used, there normally is no waiver.  But where,
> as here, counsel attempts to make a testimonial use of
> these materials the normal rules of evidence come into
> play with respect to cross-examination and production
> of documents.

422 U.S. at 239-40 (second internal footnote omitted).  The
Shinnecock Indian Nation v. Kempthorne, supra, 652 F. Supp. 2d at
365 ("[A]n examination of cases on waiver of the attorney work
product privilege indicates that courts generally permit discov-
ery of work product based on implied or subject-matter waiver
only where the privileged communications have affirmatively been
put at issue or when the defendant seeks to exploit the doctrine
for a purpose inconsistent with the privilege, such as for the
unilateral testimonial use of privileged communications." (col-
lecting cases)); Mfg. Admin. & Mgmt. Sys., Inc. v. ICT Grp.,
Inc., 212 F.R.D. 110, 113 (E.D.N.Y. 2002) ("Precluding discovery
of work product [when a party makes evidentiary use of its
substance at trial] could inhibit cross-examination and stilt the
truth-finding process, because, for example, the opposing party
would be prevented from illustrating any inconsistencies between
the proffered testimony and certain pretrial statements contained
in the work product.  Under these circumstances, the work product
protection is 'waived' and the work product is therefore
discoverable."); Alpex Computer Corp. v. Nintendo Co., Ltd., 86
Civ. 1749 (KMW), 1994 WL 330381 at *2 (S.D.N.Y. 1994) (Wood,

D.J.) ("Testimonial use of material otherwise protected by the attorney-client privilege or the work product privilege results in 'subject matter waiver' of material related to the testimony and necessary to proper evaluation of it.").

      B.   Application of the
             Foregoing Principles
             <u>to the Documents in Issue</u>

      Paribas has submitted twenty-five documents relating to the MBIA Letter for <u>in camera</u> review.  In general, the documents are extremely relevant to an understanding of how the MBIA Letter came into existence, and a fact finder could conclude that the origin of the MBIA Letter has a substantial impact on the weight to be accorded the MBIA Letter.

      I shall first determine which documents, if any, are entitled to the attorney-client privilege or work-product protection.  I shall then determine whether Paribas has waived the privilege or protection.  Unfortunately, Paribas has not identified which privilege or protection applies to which documents.  I am, therefore, forced to guess at what privilege or protection might be applicable to each document.

      Most of these documents are email chains, and there is duplication among the documents.  Documents 1, 2, 4, 5, 8, 9, 10, 11, 14, 16, 17, 21 and 22 are email chains that are entirely

contained within other documents.  Because these documents are
duplicative of other documents, they need not be addressed
separately.

        Some emails within an email chain are not covered by
the same privilege or protection as the other emails within the
chain.  Thus, each email must be addressed individually.  In
order to accomplish this, I shall refer to each individual email
by the number of the document within which it is found and an
alphabetic suffix reflecting the position of each email within
the chain.  For example, because each email chain is in reverse
chronological order, Document 3a refers to the most recent (or
last in time) email contained in Document 3, Document 3b refers
to the second most recent (or second to last in time) email
contained in Document 3, etc.  Where a document consists of a
single email, such as documents 24 and 25, the alphabetic suffix
is omitted.  For clarity, I have included the date and time of
each email in addition to the alphanumeric identifier described
above.

        With one exception -- Document 25 -- I find that none
of the documents are protected by the attorney-client privilege.
Except for Document 25, none are confidential communications from
Paribas to its counsel made for the purpose of securing legal
advice, and none are communications of legal advice from Paribas'

counsel to Paribas that reflect a client confidence.  The commu-
nications between counsel and client are primarily in the nature
of status reports, describing events occurring in the litigation
and events comprising trial preparation.

      The following constitutes my rulings as to the applica-
bility of the attorney-client privilege ("a-c") and work-product
doctrine ("w-p") with respect to each of the emails in issue:

| 3a<br>05/06/11<br>7:14 pm | no w-p |
|---|---|
| 3b<br>05/06/11<br>1:04 pm | w-p; description of counsel's trial preparation;<br>no opinion w-p |
| 3c<br>05/06/11<br>12:58 pm | w-p; communication with prospective witness; no<br>opinion w-p |
| 6a[1]<br>05/08/11<br>10:13 pm | w-p (draft complaint); description of counsel's<br>trial preparation; no opinion w-p |
| 7b[2]<br>05/08/11<br>6:12 pm | w-p (draft complaint); description of counsel's<br>trial preparation; no opinion w-p; |
| 12a<br>05/10/11<br>8:14 pm | w-p; description of counsel's trial preparation;<br>no opinion w-p |

---

[1]The remaining emails comprising Document 6 are contained in
Document 12.

[2]The remaining emails comprising Document 7 are contained in
Document 12.

| | |
|---|---|
| 12b<br>05/10/11<br>1:28 pm | opinion w-p in last two sentences of first paragraph; balance is unprotected status report; no other w-p |
| 12c<br>05/09/11<br>12:41 pm | w-p; description of counsel's trial preparation; no opinion w-p |
| 12d<br>05/09/11<br>10:39 am | party w-p |
| 12e<br>05/08/11<br>6:12 pm | w-p; description of counsel's trial preparation; no opinion w-p |
| 12f<br>05/06/11<br>4:36 pm | w-p; description of counsel's trial preparation; no opinion w-p |
| 12g<br>04/27/11<br>6:13 pm | primarily a neutral status report; opinion w-p in: (1) second paragraph, second and third sentences; (2) third paragraph, last line from "as" through "be" and (3) fourth paragraph, second sentence |
| 12h<br>attachment<br>to 12e | w-p (draft of MBIA Letter); no opinion w-p |
| 13a[3]<br>05/10/11<br>2:38 pm | w-p; no opinion w-p |
| 15a[4]<br>05/10/11<br>4:31 pm | w-p; no opinion w-p |

---

[3]The remaining emails comprising Document 13 are contained in Document 18.

[4]The remaining emails comprising Document 15 are contained in Document 18.

```
18a              w-p; no opinion w-p
05/11/11
9:23 am


18b              w-p; no opinion w-p
05/10/11
9:56 pm


18c              w-p; no opinion w-p
05/10/11
7:58 pm


18d              w-p; no opinion w-p
05/10/11
7:57 pm


18e              w-p; no opinion w-p
05/10/11
4:27 pm


18f              w-p; no opinion w-p
05/10/11
3:00 pm


18g              w-p; no opinion w-p
05/10/11
1:07 pm


18h              w-p; no opinion w-p
05/10/11
10:43 am


18i              w-p; no opinion w-p
05/06/11
12:58 pm


19               w-p; no opinion w-p
05/11/11
10:38 am
```

```
20a[5]            w-p; no opinion w-p
5/11/11
10:56 am

23a               w-p; no opinion w-p
05/11/11
3:04 pm

23b               w-p; no opinion w-p
05/11/11
2:53 pm

23c               w-p; no opinion w-p
05/11/11
2:42 pm

23d               w-p; no opinion w-p
05/11/11
10:38 am

24                w-p; no opinion w-p
05/11/11
03:49 pm

25                a-c; w-p; opinion w-p in:  (1) first paragraph,
05/11/11          fourth and fifth sentences and (2) second
10:04 pm          paragraph, second and third sentences; attached
                  draft complaint is w-p
```

        The next issue is whether Paribas has made unilateral

testimonial use of the MBIA Letter and, if so, to what extent

does that use operate as a waiver of work-product protection.

        Although I have not found any case containing a univer-

sal definition of testimonial use, the cases seem to suggest that

testimonial use of a statement or document occurs when its

---

        [5]The remaining emails comprising Document 20 are contained
in Document 23.

contents are asserted for the truth of the matter asserted therein. See Nat'l Immigration Project of the Nat'l Lawyers Guild v. United States Dep't of Homeland Sec., 842 F. Supp. 2d at 720, 725-26 (S.D.N.Y. 2012) (Rakoff, D.J.) testimonial use of work-product in appellate argument waives work-product); see also In re Steinhardt Partners, L.P., 9 F.3d 230, 234-35 (2d Cir. 1993) (disclosure of counsel's memo to SEC in an effort to discourage commencement of enforcement action constitutes testi-monial use); Granite Partners, L.P. v. Bear Stearns & Co. Inc., 184 F.R.D. 49, 54 (S.D.N.Y. 1999) (Sweet, D.J.) ("The work product privilege is waived when a party to a lawsuit uses it in an unfair way that is inconsistent with the principles underlying the doctrine of privilege. It is well settled that waiver may be imposed when the privilege-holder has attempted to use the privilege as both 'sword' and 'shield.'" (internal quotation marks and citation omitted)); In re Kidder Peabody Sec. Litig., supra, 168 F.R.D. at 473 (concluding that an affirmative use of a report and, by implication, the underlying witness interview statements, triggered a waiver of the privilege); Coleco Indus., Inc. v. Universal City Studios, Inc., 110 F.R.D. 688, 691 (S.D.N.Y. 1986) (Sweet, D.J.) ("Kroft's affidavit and attached work product were proffered as a 'testimonial use' of materials otherwise privileged. Fairness requires that discovery not be

limited only to those documents which have selectively been
disclosed.").

　　　　Paribas has affirmatively used the MBIA letter as
evidence of the correctness of its interpretation of the manner
in which insurance proceeds should be distributed.  It not only
annexed the MBIA Letter to the Amended Complaint and referred to
it in Paragraph 36 thereof, Paribas also cited the MBIA Letter in
its opposition to BONY's motion to dismiss the Amended Complaint
(BNP Paribas's Memorandum of Law in Opposition to Bank of New
York Mellon's Motion to Dismiss, dated June 8, 2011 (Docket Item
21), at 7-8).  Judge Gardephe also relied, in part, on the MBIA
Letter in denying, in part, BONY's motion to dismiss (Order dated
March 28, 2012 (Docket Item 25) at 31).  Given Paribas' affirma-
tive conduct in putting the MBIA Letter before the Court and
Judge Gardephe's actual reliance on it, I conclude that Paribas
has made testimonial use of the MBIA Letter.

　　　　Having made testimonial use of the MBIA Letter, I
conclude that Paribas has waived work-product protection with
respect to the documents in issue except for (1) the opinion
work-product identified above and (2) drafts of the amended
complaint.  Paribas proffers the MBIA Letter as independent
corroboration of the correctness of its position, and the docu-
ments in issue could bear substantially on the weight to be

attributed to the MBIA Letter. To permit Paribas to rely on the MBIA Letter while withholding evidence concerning its origin creates a serious risk of leaving the fact finder with a misim-pression concerning how and why the MBIA Letter came into exis-tence. As a matter of fairness, I conclude that non-opinion work-product concerning the MBIA Letter should be produced.

Drafts of the Amended Complaint need not be produced because, as drafts, they are work product, Bush Dev. Corp. v. Harbour Place Assoc., 632 F. Supp. 1359, 1363 (E.D. Va. 1986), and they do not relate to the circumstances surrounding the creation of the MBIA Letter.

IV. Conclusion

Accordingly, no later than ten days from the date of this Order, Paribas is to produce the following documents to counsel for defendant:

| Document | Portion to Be Produced |
|---|---|
| 3a 05/06/11 7:14 pm | all |
| 3b 05/06/11 1:04 pm | all |

21

```
3c                 all
05/06/11
12:58 pm

6a                 all except draft complaint
05/08/11
10:13 pm

7b                 all
05/08/11
6:12 pm

12a                all
05/10/11
8:14 pm

12b                all except for last two sentences of first
05/10/11           paragraph
1:28 pm

12c                all
05/09/11
12:41 pm

12d                all
05/09/11
10:39 am

12e                all
05/08/11
6:12 pm

12f                all
05/06/11
4:36 pm

12g                all except (1) second paragraph, second and third
04/27/11           sentences; (2) third paragraph, last line from
6:13 pm            "as" through "be" and (3) fourth paragraph, second
                   sentence

12h                all
attachment
to 12e
```

```
13a              all
05/10/11
2:38 pm


15a              all
05/10/11
4:31 pm


18a              all
05/11/11
9:23 am


18b              all
05/10/11
9:56 pm


18c              all
05/10/11
7:58 pm


18d              all
05/10/11
7:57 pm


18e              all
05/10/11
4:27 pm


18f              all
05/10/11
3:00 pm


18g              all
05/10/11
1:07 pm


18h              all
05/10/11
10:43 am


18i              all
05/06/11
12:58 pm
```

```
19              all
05/11/11
10:38 am

20a        all
5/11/11
10:56 am

23a             all
05/11/11
3:04 pm

23b             all
05/11/11
2:53 pm

23c             all
05/11/11
2:42 pm

23d             all
05/11/11
10:38 am

24              all
05/11/11
03:49 pm

25              none
05/11/11
10:04 pm
```

Dated:  New York, New York
        June 5, 2013

SO ORDERED

_____
HENRY PITMAN
United States Magistrate Judge

24

```
Copies transmitted to:

Jonathan Pickhardt, Esq.
Rex Lee, Esq.
Quinn Emanuel Urquhart
   & Sullivan, LLP
51 Madison Avenue
New York, New York  10010

Steven G. Brody, Esq.
Robert C. Stillwell, Esq.
Bingham McCutchen LLP
399 Park Avenue
New York, New York  10022
```